IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JASON G. BENDER,

    Petitioner,

v.

WARDEN, LONDON CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:21-cv-00469
JUDGE MICHAEL H. WATSON
Magistrate Judge Elizabeth P. Deavers

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties.

Petitioner's Motion to Proceed on his exhausted claims (ECF No. 13) is **GRANTED**.

For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED**.

## I. BACKGROUND

Petitioner challenges his convictions after a jury trial in the Union County Court of Common Pleas on felonious assault, kidnapping, rape, and having a weapon while under disability, with specifications. The Ohio Third District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶2} This case stems from a June 28-29, 2018 incident during which Bender restrained the victim, K.W., with ropes around her neck, arms, and legs, and by binding her hands and feet with ratchet straps and suspending her from the rafters of a basement ceiling, then brutally beating and raping her. On July 13, 2018, Bender was indicted on four counts: Count One of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony, with a firearm specification under R.C. 2941.145(A); Count Two of kidnapping in violation of R.C. 2905.01(A)(3), (C)(1), a first-degree felony, with a sexual-motivation specification

under R.C. 2941.147(A) and a sexually violent predator specification under R.C. 2941.148(A); Count Three of rape in violation of R.C. 2907.02(A)(2), (B), a first-degree felony, with a sexually violent predator specification under R.C. 2941.148(A) and a criminal-gang-activity specification under R.C. 2941.142(A); and Count Four of having weapons while under disability in violation of R.C. 2923.13(A)(2), (B), a third-degree felony.1 (Doc. No. 1). Bender appeared for arraignment on July 24, 2018 and entered pleas of not guilty. (Doc. No. 13).

{¶3} On January 9, 2019, the State filed a motion requesting that the trial court declare K.W. a court's witness. (Doc. No. 42).

{¶4} On April 22, 2019, the State filed a motion to dismiss the sexually violent predator specification alleged in Counts Two and Three and the criminal-gang-activity specification alleged in Count Three of the indictment, which the trial court dismissed that same day. (Doc. Nos. 75, 76).

{¶5} The case proceeded to a jury trial on April 22-24, 2019. On April 24, 2019, the jury found Bender guilty of all the counts and specifications in the indictment. (Doc. Nos. 78, 79, 80, 81). (See also Doc. No. 84). On May 29, 2019, the trial court sentenced Bender to 7 years in prison on Count One, 10 years in prison on Count Two, 10 years in prison on Count Three, 30 months in prison on Count Four, and 3 years in prison on the firearm specification. (Doc. No. 87). The trial court ordered Bender to serve consecutively the prison terms imposed under Counts One, Two, and Three, and the firearm specification. (Id.). Further, the prison term imposed as to Count Four was ordered to be served concurrently to the consecutive prison terms imposed as to Counts One, Two, and Three, and the firearm specification for an aggregate sentence of 30 years in prison. (Id.). The trial court also classified Bender as a Tier III sex offender. (Doc. No. 88).

{¶6} Bender filed a notice of appeal on June 18, 2019 and raises three assignments of error for our review. (Doc. No. 93).

Assignment of Error No. I

Appellant was deprived of his constitutional rights to due process and to confront his accusers in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as a consequence of the trial court permitted [sic] hearsay testimony from a medical witness regarding statements in the medical record that were not admissible under any hearsay exception, thereby preventing appellant from exercising his right to confront in a meaningful way.

***

Assignment of Error No. II

> Appellant was deprived of his constitutional rights to due process and effective assistance of counsel in violation of his Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, when the trial court called the victim as a court witness pursuant to Evid.R. 614, and, further, when appellant's trial counsel failed to object to the court calling the victim pursuant to Evid.R. 614.
>
> ***
>
> Assignment of Error No. III
>
> The evidence adduced at trial is insufficient as a matter of law to support appellant's conviction on the charge of rape.

*State v. Bender*, 3rd Dist. No. 14-19-22, 2020 WL 995223 (Ohio Ct. App. Mar. 2, 2020). On March 2, 2020, the state appellate court affirmed the trial court's judgment. *Id*. On July 21, 2020, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Bender*, 159 Ohio St.3d 1447 (Ohio 2020). On December 1, 2020, Petitioner filed a petition for post-conviction relief in the state trial court, asserting the denial of the effective assistance of counsel and prosecutorial misconduct. Doc. 9, PAGEID # 277. On January 20, 2021, the trial court dismissed the post-conviction petition as untimely. (ECF No. 9, PAGEID # 324.) Petitioner filed a timely appeal, Doc. 9, PAGEID # 331, which remains pending in the Ohio Court of Appeals.

On February 2, 2021, Petitioner filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 2.) He asserts that his convictions violate the Confrontation Clause (claim one); that the alleged victim unconstitutionally testified as a court witness under Ohio Evidence Rule 614 (claim two); that he was denied the effective assistance of trial counsel because his attorney failed to object (claim three); and that the evidence is constitutionally insufficient to sustain his rape conviction (claim four). It is the Respondent's position that Petitioner's claims do not provide a basis for relief.

## II. STANDARD OF REVIEW

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case. The United States Supreme Court has described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state–court rulings, and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards found in § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct.

1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 798, (2019).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, No. 16-1504, 2017 WL 2241814, at *5 (6th Cir. May 22, 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). Moreover, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003)) ("*Miller–El I*").

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster,* 563 U.S. 170, 181 (2011).

### III. CLAIM ONE

Petitioner asserts that hearsay statements of the alleged victim by testimony Andi Stevens, a forensic nurse, violated the Confrontation Clause. The state appellate court rejected this claim in relevant part as follows:

5

{¶7} In his first assignment of error, Bender argues that the trial court erred by admitting testimony of Andi Stevens ("Stevens"), a forensic nurse coordinator and sexual assault nurse examiner ("SANE") with OhioHealth, as to statements made to her by K.W. Bender argues that the admission of Stevens's testimony (i.e., K.W.'s statements) violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. He further argues that Stevens's testimony was inadmissible hearsay evidence.

Standard of Review

{¶8} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "However, we review *de novo* evidentiary rulings that implicate the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97. "*De novo* review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio,* 64 Ohio St.3d 145, 147 (1992).

Analysis

{¶9} We will begin by addressing whether the admission of Stevens's testimony violated Bender's Sixth Amendment rights. The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that " '[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.' " *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354 (2004), quoting the Confrontation Clause. *See also State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 34; *State v. McNeal*, 3d Dist. Allen No. 1-01-158, 2002-Ohio-2981, ¶ 43, fn. 13.

The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness. *Maxwell* at ¶ 34, citing *Crawford* at 53-54. The United States Supreme Court "did not define the word 'testimonial' but stated that the core class of statements implicated by the Confrontation Clause includes statements 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Id*., quoting *Crawford* at 52

{¶10} "Only testimonial hearsay implicates the Confrontation Clause." *McKelton* at ¶ 185. "'[T]estimonial statements are those made for "a primary purpose of creating an out-of-court substitute for trial testimony."'" *Id.*, quoting *Maxwell* at ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143 (2011). That is, "[t]o rank as 'testimonial,' a statement must have a 'primary purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution.'" *Bullcoming v. New Mexico*, 564 U.S. 647, 659, 131 S.Ct. 2705, 2714 (2011), fn. 6, quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266 (2006). "The key issue is what constitutes a testimonial statement: 'It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.'" *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 33, quoting *Davis* at 821. Nevertheless, "[t]here is also no dispute that the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 18, quoting *Crawford* at 59, and citing *Williams v. Illinois,* 567 U.S. 50, 57-58, 132 S.Ct. 2221 (2012).

{¶11} In this case, Bender argues that the trial court erred by admitting Stevens's testimony regarding statements made to her by K.W.—namely, a "narrative history" provided to Stevens's by K.W. at the hospital. However, even if any of K.W.'s statements to Stevens were testimonial in nature, there was no constitutional error since the victim testified at trial and was subject to cross-examination. "Admission of testimonial statements against a party is a constitutional error when that party does not have the opportunity to cross-examine the declarant." *State v. Durdin,* 10th Dist. Franklin No. 14AP-249, 2014-Ohio-5759, ¶ 30, citing *State v. Arnold,* 126 Ohio St.3d 290, 2010-Ohio-2742, ¶ 36, citing *Crawford* at 68. "Consequently, the Confrontation Clause does not require exclusion of prior statements of a witness who testifies at trial." *State v.* Lykins, 4th Dist. Adams No. 18CA1079, 2019-Ohio-3316, ¶ 90, citing *California v. Green*, 399 U.S. 149, 164, 90 S.Ct. 1930 (1970), and citing *Arnold* at ¶ 66, *State v. Powell,* 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 64, *State v. Kersbergen*, 12th Dist. Butler No. CA2014-10-218, 2015-Ohio-3103, ¶ 68, *State v. Gray,* 12th Dist. Butler No. CA2011-09-176, 2012-Ohio-4769, ¶ 48, and *State v. Isa*, 2d Dist. Champaign No. 07-CA-37, 2008-Ohio-5906, ¶ 16. Therefore, because K.W. testified at trial, and Bender was able to fully cross-examine her regarding her out-of-court statements, Stevens's testimony did not violate the Confrontation Clause under the facts presented. *Id.* at ¶ 91; *State v. Rose,* 12th Dist. Butler No. CA2011-11-214, 2012-Ohio-5607, ¶ 47, citing *Gray* at ¶ 48.

***

{¶17} Even if we were to conclude that Stevens's testimony was inadmissible hearsay, the error would be harmless. *See id*. at ¶ 21. "'Any error in the admission of hearsay is generally harmless where the declarant of the hearsay statement is cross-examined on the same matters and the seemingly erroneous evidence is

cumulative in nature.'" *Id.*, quoting *In re M.E.G.*, 10th Dist. Franklin Nos. 06AP-1256, 06AP-1257, 06AP-1258, 06AP-1263, 06AP-1264, and 06AP-1265, 2007-Ohio-4308, ¶ 32. Indeed, as we previously addressed, the victim was present at trial and subject to cross-examination, and the jury was able to assess her credibility. *See id.; State v. Ceron*, 8th Dist. Cuyahoga No. 99388, 2013-Ohio-5241, ¶ 61; *Rose*, 2012-Ohio-5607, at ¶ 48, citing *State v. Cappadonia*, 12th Dist. Warren No. CA2008-11-138, 2010-Ohio-494, ¶ 20.

{¶18} Moreover, Bender's argument that Stevens's testimony was inadmissible hearsay because "Nurse Stevens [sic] primary reason for performing her specialized exam on [K.W.] was to obtain evidence of a crime" is misplaced. (Appellant's Brief at 12). *See Wallace* at ¶ 19; *Rose* at ¶ 42. Instead, Bender's argument is relevant to whether the victim's statements were testimonial for purposes of the Confrontation Clause. *See Wallace* at ¶ 19; *Rose* at ¶ 42. However, because we already concluded that no Confrontation Clause violation occurred in this case, Bender's argument is specious.

{¶19} For these reasons, Bender's first assignment of error is overruled.

*State v. Bender*, 2020 WL 995223, at *2-5.

By its words, the Sixth Amendment protects a defendant's right "to be confronted with the witnesses against him." U.S. Const. amend. VI. *Levingston v. Warden, Warren Corr. Inst.*, 891 F.3d 251, 254 (6th Cir. 2018). Petitioner had that opportunity here. Petitioner had the opportunity "to be confronted with" the alleged victim at trial, "where he could cross-examine [her] and try to expose [her] accusation as a lie." *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 62 (2004)). The Confrontation Clause does not prohibit the purported hearsay testimony of a witness who testifies at trial and is subject to cross-examination by the defendant. "To the contrary, [the Supreme Court has] held that a court may admit the statements without violating the Sixth Amendment if the witness is 'test[ed] in the crucible of cross-examination' at trial." *Id.* (citing *Crawford,* at 61.)

Claim one is without merit.

## IV. CLAIMS TWO and THREE

Petitioner asserts that the trial court violated Petitioner's right to due process by calling the alleged victim as a court witness under Ohio evidence rules and he was denied the effective assistance of counsel because his attorney failed to object. Petitioner failed to raise the former issue on direct appeal. He thereby appears to have waived this issue for review. *See Hale v. Shoop*, No. 1:18-CV-504, 2021 WL 1215793, at *22 (N.D. Ohio Mar. 31, 2021) (citing *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) ("Under Ohio law, the failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under the State's doctrine of *res judicata*."); *State v. Perry,* 10 Ohio St.2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal). However, the Respondent did not raise this affirmative defense of procedural default. Further, "the Sixth Circuit strongly discourages the *sua sponte* invocation of procedural affirmative defenses that were not raised by the respondent." *Benoit v. Bock*, 237 F. Supp. 2d 804, 807 (E.D. Mich. 2003) (citing *Scott v. Collins*, 286 F.3d 923, 928-29 (6th Cir. 2002)).

In any event, Petitioner's claim regarding the alleged violation of state law does not provide him a basis for relief. 28 U.S.C. § 2254(a). As a general matter, errors of state law, especially the improper admission of evidence, do not provide grounds for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). To be entitled to habeas relief, a petitioner must demonstrate that an evidentiary ruling violated more than a state rule of evidence or procedure. In order to prevail, a petitioner must show that the evidentiary ruling was "so egregious that it resulted in a denial of fundamental fairness." *Giles,* 449 F.3d at 704 (citing *Baze v. Parker*, 371 F.3d 310, 324 (6th Cir. 2004)). Stated

differently, "'[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.'" *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). A state court evidentiary ruling does not violate due process unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Giles*, 449 F.3d at 704 (citing *Coleman v. Mitchell,* 268 F.3d 417, 439 (6th Cir. 2001)). The record fails to reflect such circumstances here.

The state appellate court rejected Petitioner's claim of ineffective assistance of trial counsel as follows:

> {¶21} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole,* 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. Strickland at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St. 3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), vacated in part on other grounds, 438 U.S. 910, 98 S.Ct. 3135 (1978).

> {¶22} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id*., quoting *Bradley* at 142 and citing *Strickland* at 694.

Analysis

On appeal, Bender alleges that his trial counsel was ineffective for failing to object to the trial court designating K.W. as a court's witness. Under Evid.R. 614(A), "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." The purpose of calling a witness as a court's witness is to allow for a proper determination in a case where a witness is reluctant or unwilling to testify, or there is some indication that the witness's trial testimony will contradict a prior statement made to police. *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 23, citing *State v. Curry*, 8th Dist. Cuyahoga No. 89075, 2007-Ohio-5721, ¶ 18; *State v. Arnold,* 189 Ohio App.3d 507, 2010-Ohio-5379, ¶ 18 (2d Dist.). "The prime candidate is a victim and an eyewitness who will not otherwise cooperate with the party originally planning to call him." *Renner* at ¶ 23, citing *Curry* at ¶ 18.

{¶24} In this case, prior to the start of trial, the State filed a motion requesting that the trial court call K.W. as its witness under Evid.R. 614(A). In support of its motion, the State represented to the trial court that since the time that K.W. was interviewed by law enforcement regarding the June 28-29, 2018 incident, K.W. "remain[ed] somewhat reluctant to testify due to the nature of th[e] matter and [was] somewhat difficult to reach." (Doc. No. 42). The State further represented, "It is believed that the victim was not supportive of law enforcement becoming involved in this matter and may be uncooperative regarding her testimony and what she may or may not recall." (*Id*.). At trial, prior to calling K.W. to the stand, the State (outside the presence of the jury) again requested (and Bender's trial counsel did not object) that the trial court call K.W. as its witness. The State argued that it "had difficulty locating" K.W.; "difficulty communicating with" K.W.; and "issued a subpoena on the day of the trial that it was scheduled for last time in order to make sure that she" appeared at trial. (Apr. 23, 2019 Tr., Vol. I, at 69). Based on this evidence, it was not error for the trial court to designate K.W. as its witness. *See Renner* at ¶ 26; *State v. Kiser*, 6th Dist. Sandusky No. S-03-028, 2005-Ohio-2491, ¶ 13, 16; *State v. Marshall*, 9th Dist. Lorain No. 01CA007773, 2001 WL 1647706, *2 (Dec. 26, 2001). Because it was not error for the trial court to designate K.W. as its witness, Bender's trial counsel was not ineffective for failing to object.

{¶25} Bender's second assignment of error is overruled.

*State v. Bender*, 2020 WL 995223, at *5-6.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing

claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 571 U.S. 1074 (2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. App'x 749, 754 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011)). To make such a showing, a petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687. "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter,* 562 U.S. 86, 105 (2011). While "'[s]urmounting *Strickland's* high bar is never . . . easy' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult." *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). The standards created under *Strickland* and § 2254(d) are both "'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (citations omitted). Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable.

The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

Petitioner cannot meet this standard here. The state appellate court found that the trial court properly called the alleged victim as the Court's witness under Ohio evidentiary rules. This Court is bound by that determination. *See McNeill v. Bagley*, No. 1:02 CV 1645, 2019 WL 4017047, at *17 (N.D. Ohio Aug. 26, 2019) (citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citing *Estelle*, 502 U.S. at 67-68). Counsel therefore did not perform in a constitutionally ineffective manner under *Strickland* by failing to object.

Claims two and three are without merit.

## V. CLAIM FOUR

Petitioner asserts that the evidence is constitutionally insufficient to support his rape conviction due to a lack of evidence that he used force or compelled the alleged victim to have sex with him. The appellate court rejected this claim:

> Bender argues that his rape conviction is based on insufficient evidence. In particular, Bender contends that his rape conviction is based on insufficient evidence because the State presented insufficient evidence that he compelled K.W. to engage in sexual conduct by force or threat of force.
>
> Standard of Review
>
> {¶27} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. "In deciding if the

13

evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

Analysis

{¶28} R.C. 2907.02 sets forth the offense of rape and provides, in relevant part: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). Bender does not dispute that he engaged in sexual conduct with K.W.; rather, he argues that the State presented insufficient evidence that he purposely compelled K.W. to engage in that sexual conduct by force or threat of force. As a result, we need only address those elements of forcible rape: (1) whether Bender purposely compelled K.W. to engage in sexual conduct, and (2) whether Bender did so by force or threat of force. *See State v. Stevens*, 3d Dist. Allen No. 1-14-58, 2016-Ohio-446, ¶ 14.

{¶29} In addressing the force-or-threat-of-force language under the rape statute, the Supreme Court of Ohio clarified that "[a] defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus.

A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature. R.C. 2901.22(A). "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). A victim "need not prove physical resistance to the offender" in order to demonstrate force. R.C. 2907.05(D).

{¶30} In rape cases in which the victim is not a child, the State "must prove force or threat of force either through direct evidence of such or by inference where the defendant overcame the victim's will by fear and duress." *State v. Rupp*, 7th Dist. Mahoning No. 05 MA 166, 2007-Ohio-1561, ¶ 33. *See also Stevens* at ¶ 20 (" '[T]he key inquiry for determining whether the State presented sufficient evidence on the element of force is whether the "victim's will was overcome by fear or duress." ' "), quoting *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 40, quoting *In re Forbess*, 3d Dist. Auglaize No. 2-09-20, 2010-Ohio-2826, ¶ 40, citing *State v. Heft*, 3d Dist. Logan No. 8-09-08, 2009-Ohio-5908, ¶ 88, citing *State v.*

*Eskridge*, 38 Ohio St.3d 56, 58-59 (1988). "[I]f the defendant created the belief that physical force will be used in the absence of submission, then threat of force can be inferred"—that is, a "threat of force includes both explicit and implicit threats" because "[n]othing in the rape statute requires the threat of force to be direct or express." *Rupp* at ¶ 33. *See also Schaim* at paragraph one of the syllabus ("The "force or threat of force" element "can be inferred from the circumstances surrounding sexual conduct."); *State v. Worrell*, 10th Dist. Franklin No. 04AP-410, 2005-Ohio-1521, ¶ 43 ("Thus, '[a] defendant purposely compels another to submit to sexual conduct by force or threat of force' by creating 'the belief that physical force will be used if the victim does not submit' to the defendant's actions."), *rev'd in part on other grounds, sub nom. In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, quoting *Schaim* at paragraph one of the syllabus. "In order for a defendant to overcome his victim's will by fear or duress, the defendant would have had to engage in sufficient behavior toward the victim. This behavior is objective and its effect is viewed in light of the totality of facts and circumstances existing at the time of the alleged rape." *Rupp* at ¶ 41. *See also Stevens* at ¶ 21 (" '[T]he amount of force [necessary to prove forcible rape under R.C. 2907.02(A)(2)] must be examined in light of the circumstances.' "), quoting *State v. Runyons*, 3d Dist. Union No. 14-91-30, 1992 WL 136196, *2 (June 9, 1992).

{¶31} On appeal, Bender contends that the State presented insufficient evidence that he purposely compelled K.W. to submit to the sexual conduct by force or threat of force because K.W.'s testimony that she "thought that her having sex with [Bender] might calm him down and stop him from hitting her" "shows that she did this knowingly and consensually." (Appellant's Brief at 24). Specifically, Bender contends that there is insufficient evidence of the force-or-threat-of-force element based on K.W.'s testimony because her testimony reveals that "[s]he may not have wanted to have sex with [Bender], and her reasons for doing so may have been far from romantic, but the sex was not forced upon her." (*Id.*).

In fact, the statement Nurse Stevens said [K.W.] made to her, that having sex with [Bender] 'usually' makes things better and makes [Bender] leave her alone, shows that this sort of sexual behavior between [Bender] and [K.W.] is not unique to the events of June 28-29, but appears to be a normal part of their non-traditional relationship. (*Id.*).

{¶32} Bender's argument is misplaced. *See Worrell* at ¶ 45 (concluding that the victim's "failure to physically resist does not negate the forcible element of the rapes"), citing *State v. Hurst*, 10th Dist. Franklin No. 98AP-1549, 2000 WL 249110, *4 (Mar. 7, 2000); *Rupp* at ¶ 42 (noting that "a victim need not risk physical damage or even death to later prove that she was raped"). K.W.'s testimony does not negate the forcible element of rape under R.C. 2907.02(A)(2); rather, K.W.'s testimony is sufficient evidence that Bender overcame her will by fear and duress. *See State v. Thomas*, 6th Dist. Lucas No. L-17-1266, 2019-Ohio-1916, ¶ 28 ("This testimony was relevant, because it provided context for the rape and tended to

explain R.I.'s lack of resistance by demonstrating Thomas's use of physical abuse, past and present, to force her compliance."). Indeed, that Bender concedes that K.W. "may not have wanted to have sex with" him is illustrative of the implicit threat to compel K.W. to engage in sexual conduct.

{¶33} At trial, K.W. testified that (at the time of the incident) she was in a romantic relationship with Bender and the two were living together. (Apr. 23, 2019 Tr., Vol. I, at 74-75). K.W. testified that (during the evening of June 28, 2018), she and Bender began arguing after Bender discovered that she was moving her things out of the residence that she shared with him. (*Id*. at 82). The State presented evidence that the argument progressed into a physical altercation during which Bender "tied [her] up down in the basement" by placing "ropes" "around [her] neck and arms and legs," then by binding her hands and her feet with "ratchet straps" and suspending her from the rafters. (*Id*. at 84-85); (Apr. 22, 2019 Tr., Vol. I, at 128); (State's Ex. 4). Then, Bender "continued hitting" her with "[h]is fist"; "a piece of wood"; "a pole"; a slingshot; a pan; and a gun. (Apr. 22, 2019 Tr., Vol. I, at 85-86); (Apr. 23, 2019 Tr., Vol. I, at 130); (State's Ex. 4). "Bender had [her] sit there on all fours kicking [her] and then he used a back whip. It's a leather strap with heavy objects on it. Leather strap with rebar and a ball bearing on it." (Apr. 23, 2019 Tr., Vol. I, at 130-131); (State's Ex. 4). K.W. "had to sit there on [her] hands and knees when he put the knife * * * in her vagina." (*Id*. at 131); (*Id*.). Stevens also testified that K.W. reported to her that Bender bit her arm. (Apr. 23, 2019 Tr., Vol. I, at 127); (State's Ex. 4).

{¶34} According to Stevens, K.W. reported that Bender would not permit her to eat or sleep because "that is part of the game, too." (Apr. 23, 2019 Tr., Vol. I, at 132); (State's Ex. 4). The State also presented evidence that (at some point during the assault), K.W. was naked and that Bender would not return K.W.'s clothes to her. (Apr. 23, 2019 Tr., Vol. I, at 130); (State's Ex. 4). Moreover, K.W. testified that Bender forced her to cut off her hair, then he used "clipper things" to make it shorter. (Apr. 22, 2019 Tr., Vol. I, at 89-90). (See also Apr. 23, 2019 Tr., Vol. I, at 131); (State's Ex. 4). K.W. further testified that she was screaming during the assault but Bender put "rags and bandanas" in her mouth to muffle her screams. (Apr. 22, 2019 Tr., Vol. I, at 131). (See also Apr. 23, 2019 Tr., Vol. I, at 129); (State's Ex. 4). According to K.W., Bender hit and kicked her over her entire body and that the altercation lasted "until the next morning." (Apr. 22, 2019 Tr., Vol. I, at 86, 89). Importantly, K.W. testified that she was "scared" of Bender during the June 28-29, 2018 incident. (Id. at 127).

{¶35} Mindful of her fear, K.W. testified that she engaged in sexual conduct ("more than once") with Bender during the assault "because [she] thought it would calm him down." (*Id*. at 88). K.W. reported to Stevens that "[u]sually [engaging in sexual conduct with Bender] makes things better and he leaves [her] alone for a little bit when [she] do[es] it," but that "[i]t turned worse" in this instance. (Apr. 23, 2019 Tr., Vol. I, at 131); (State's Ex. 4). K.W. testified that she eventually escaped by running and hiding from Bender, then having a neighbor take her to Burger King

16

for help. (Apr. 22, 2019 Tr., Vol. I, at 93-94). According to K.W., she requested that her friend take her to a hospital in another county because she was afraid that Bender would find her at the local hospital. (*Id*. at 95).

{¶36} Based on the totality of the circumstances of this case, a rational trier of fact could infer that K.W.'s state of fear or duress during a prolonged period of torture was such that she was compelled to submit to the sexual conduct to end the torture. *See Thomas*, 2019-Ohio-1916, at ¶ 27 (concluding that the victim's testimony "regarding past incidents of physical abuse" and that she engaged in sexual conduct with Thomas because "she wanted the abuse to end and for Thomas to leave" was relevant to whether Thomas purposely compelled the victim to engage in sexual conduct by force or threat of force). *See also State v. Rucker*, 1st Dist. Hamilton No. C-110082, 2012-Ohio-185, ¶ 17 (concluding that evidence that Rucker struck the victim with belts—even if the beatings occurred at times other than the sexual assaults—was relevant to whether the victim's will had been overcome by fear or duress); *Hurst*, 2000 WL 249110, at *4 (Mar. 7, 2000) (noting that the absence of physical resistance "highlights the frightful experiences and threat of force present during the sexual encounter"). Accordingly, a rational trier of fact could conclude beyond a reasonable doubt that Bender engaged in conduct which would overcome K.W.'s will by fear or duress and, therefore, that Bender purposely compelled K.W. to engage in sexual conduct by force or threat of force. Consequently, Bender's rape conviction is based on sufficient evidence, and his third assignment of error is overruled.

*State v. Bender*, 2020 WL 995223, at *6-9.

The Fourteenth Amendment's Due Process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In reviewing a claim of insufficiency of the evidence, the Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson,* 443 U.S. at 324 n.16). A federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v.*

*West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson*, 443 U.S. at 326). Instead, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. at 296–97 (quoting *Jackson*, 443 U.S. at 326). Further, federal habeas courts apply a "double layer" of deference to state court determinations of the sufficiency of the evidence. Deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Second, even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle to meet.

For the reasons discussed by the state appellate court, plainly, Petitioner cannot do so here. The evidence plainly was sufficient to support the rape conviction. Claim four is clearly without merit.

## VI. DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that this action be **DISMISSED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED.**

                                     s/ *Elizabeth A. Preston Deavers*
                                     **ELIZABETH A. PRESTON DEAVERS**
                                     **UNITED STATES MAGISTRATE JUDGE**